UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| BRUCE CLELAND, | : | |
| Plaintiff, | : | |
| | : | Case No. 3:09-cv-2146 (VLB) |
| - against - | : | |
| | : | |
| SV SPECIAL SITUATIONS FUND LP, STAGG CAPITAL GROUP LLC, KNIGHT LIBERTAS LLC, 3V CAPITAL MANAGEMENT LLC, 3V CAPITAL PARTNERS LP, 3V CAPITAL ADVISORS LLC, GARY KATCHER, SCOTT A. STAGG, and MARK FOCHT, | : | April 30, 2010 |
| Defendants. | : | |

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS
KNIGHT LIBERTAS LLC'S AND GARY KATCHER'S MOTION TO DISMISS

PRELIMINARY STATEMENT

Plaintiff Bruce Cleland's Complaint lacks any specific allegations sufficient to state claims against Defendants Gary Katcher ("Katcher") and Knight Libertas LLC ("Libertas"). Nowhere in the Complaint is it alleged that Katcher or Libertas engaged in any specific wrongdoing; that Katcher specifically made any misrepresentation or omission; or facts sufficient to establish that Katcher or Libertas knew of Defendants Scott Stagg's ("Stagg") and Mark Focht's ("Focht") alleged embezzlements. Rather, the Complaint is based entirely on overly broad and

vague allegations that mislead the Court by improperly and inaccurately lumping Katcher and Libertas with separate and unrelated Defendants.  Likewise, the Complaint carelessly combines allegations related to Plaintiff's separate investments in distinct legal entities, making it is impossible to discern what unspecified documents Plaintiff alleges were misleading (and from which entity they were disseminated) or even from which specific entities Plaintiff is alleging Stagg and Focht embezzled funds.  Clearly, these confused allegations -- which nowhere link Katcher or Libertas to any alleged wrongdoing -- are insufficient to satisfy the most basic pleading standards, much less meet the exacting pleading requirements of the Private Securities Litigation Reform Act ("PSLRA") and Rule 9(b).

In addition to Plaintiff's vague allegations blurring distinctions between his investments in separate entities (making it impossible to decipher Plaintiff's allegations), the Complaint includes numerous general defects that independently mandate the claims against Katcher and Libertas must be dismissed.  First, many of the causes of action Plaintiff purports to assert against Katcher and Libertas are in actuality "derivative" in nature and Plaintiff lacks standing to bring such claims in his own name.  Second, the Complaint utterly fails to plead any cognizable injury suffered by Plaintiff related to any alleged conduct of Katcher or Libertas.  Third, there is no basis for the Court to exercise supplemental jurisdiction over the common law claims asserted against Katcher and Libertas once the federal securities fraud

claims against Katcher are properly dismissed.  Accordingly, the claims against Katcher and Libertas should be dismissed.

### RELEVANT ALLEGATIONS[1]

This action piggybacks on and repeats allegations underlying multiple pending actions related to disputes between two former business partners, Katcher and Stagg.[2]  Plaintiff in this action allegedly invested in the master fund in a hedge fund structure formed by Katcher and Stagg, 3V Capital Master Fund L.P. ("3V Master

---

[1] For the purposes of evaluating a Rule 12(b)(6) motion to dismiss, the Court must accept well-pleaded factual allegations in the complaint as true, but need not accept as true conclusions unsupported by the facts alleged, legal conclusions, bald assertions or unwarranted inferences.  *Martin v. American Equity Ins. Co.*, 185 F. Supp. 2d 162, 163 (D. Conn. 2002).

[2] Pending before an arbitration panel in New York are claims filed on July 29, 2008 by Gary Katcher against Scott A. Stagg to recover more than $6 million Stagg contractually owes Katcher for Stagg's  September 2007 buy-out of Katcher's 50% ownership interests in 3V Capital Management, LLC ("3V Management") and 3V Capital Advisors, LLC ("3V Advisors").  *Gary Katcher v. Scott Stagg, et al.*, American Arbitration Association No. 13-148-Y-01730-08 (the "Arbitration Action").  On August 11, 2008, Gary Katcher filed two additional lawsuits in Connecticut state court:  the first seeking to recover Katcher's more than $4 million Capital Account in 3V Capital Partners, L.P. that Stagg and/or Focht wrongfully converted to SV Special Situations Master Fund, LTD for their own benefit and a pre-judgment remedy to secure the claims; and the second seeking a pre-judgment remedy to secure the claims in the Arbitration Action.  *Katcher v. 3V Capital Partners, et al.*, No. FST-CV-08-5008383-S (X05); *Katcher v. Stagg, et al.*, No. FST-CV-08-5008570-S (X05).  The Connecticut state court awarded Katcher *ex parte* temporary restraining orders in both actions requiring defendants to hold $7 million for Katcher's benefit.  In response, on November 11, 2008, 3V Capital Master Fund, LTD filed a complaint in Connecticut federal court against Knight Libertas LLC, Libertas Holdings LLC, Libertas Partners LLC, and Gary Katcher alleging that Libertas Holdings and/or Libertas Partners received unwarranted transfers from 3V Capital Master Fund, LTD in 2006 and 2007.   A Second Amended Complaint filed on March 5, 2010 substituted SV Special Situations Master Fund, LTD as plaintiff and added allegations about additional transfers.  *SV Special Situations Master Fund, LTD v. Knight Libertas LLC, et al.*, No. 3:08cv1769-SRU  (hereinafter, the "Federal Action").  Defendants in the Federal Action have denied any wrongdoing or that they received any improper transfers.

Fund"), and separately in the domestic feeder fund in a similar hedge fund structure formed and operated by Stagg alone, SV Special Situations Fund LP.  (Complaint at ¶¶ 2, 9.) (hereinafter "¶ __".)  The Complaint inaccurately groups those separate entities together as "SV."  (See ¶ 2.)  The only investment date alleged in the Complaint is "on or about August 1, 2006."  (¶ 16.)

According to the Complaint, Stagg and Focht, the Chief Operating Officer of 3V Management and Stagg Capital Group LLC, embezzled and misappropriated money from the 3V hedge funds and the SV hedge funds.  (¶¶ 3, 15.) The Complaint alleges that Focht transferred $3 million from "SV" to Libertas in February 2007; transferred $5 million from "SV" to Libertas at some unstated time after February 2007; and transferred at least $40,000 from "SV" to his own accounts. (¶¶ 26-27.)  The Complaint alleges that Focht concealed these transfers through his "substantial freedom in operating SV, Group, Management and Advisors" by booking fictitious securities transaction on the books and records of "SV."  (¶¶ 25, 28.)

With respect to Stagg, the Complaint alleges that he transferred at least $350,000 in cash and Smart SMS stock owned by "SV" to two "no-show" employees he was involved with in "romantic relationships."  (¶ 29.)  In addition, the Complaint alleges that Stagg has improperly disregarded Plaintiff's August 19, 2008 redemption request and has refused to redeem Plaintiff's Capital Account in the SV hedge fund. (¶ 31.)

According to the Complaint, Stagg's and Focht's misappropriations made three vaguely described documents -- none of which are provided to the Court and only two of which are excerpted in the Complaint -- materially false and misleading.  The Complaint alleges that the following documents failed to disclose Stagg's and Focht's misappropriations: (a) the investment objectives section of an Explanatory Memorandum dated July 1, 2007; (b) unspecified provisions in the Explanatory Memorandum's related Subscription Agreement; and (c) the redemption procedures and investment objects and purposes described in the Explanatory Memorandum's related Limited Partnership Agreement.[3]  (¶¶ 1, 4, 19-22, 33, 35.)  The Complaint does not allege whether these documents relate to the 3V hedge funds or the SV hedge funds.

The Complaint does not accuse Katcher or Libertas of direct involvement in any wrongdoing.  Rather, the Complaint only briefly mentions Katcher by name, alleging that he, as well as other defendants, owned and/or operated SV, Stagg Capital Group (which the Complaint alleges was previously known as 3V Capital Management), and unnamed "related entities," and was appointed as a "manager" of an unnamed entity.[4]  (¶¶ 2, 13, 17.)  On the basis of these sparse

---

[3] The Complaint alternately describes the Limited Partnership Agreement as the "Partnership Agreement" or the "Limited Partnership Agreement."  (*Compare* ¶¶ 17-19, 22 *with* ¶ 21.)  For clarity, this memorandum will use the term "Limited Partnership Agreement."

[4] As described below, Katcher was only a 50% owner of 3V Management and 3V Advisors until September 2007 and never owned, operated, or was employed by any SV fund or related entity.

allegations, Plaintiff lumps Katcher with Stagg and Focht in four claims:  securities fraud under Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 for misstatements and omissions (First Claim); violations of 20(a) of the Exchange Act (Second Claim); Breach of Fiduciary Duty (Fourth Claim); and Negligence (Fifth Claim).   Likewise, the Complaint only mentions Libertas in passing -- the lone allegation related to Libertas is that Focht allegedly funneled two of the misappropriations from 3V Master Fund through the fund's broker, Libertas.  (¶¶ 26-27.)  On the basis of this allegation, the Complaint alleges that Libertas was unjustly enriched (Fourth Claim).

**ARGUMENT**

**I.**

**Pervasive Defects Throughout The Complaint**
**Require That Plaintiff's Claims Against Katcher And Libertas Be Dismissed**

Notwithstanding the fact that each cause of action against Katcher or Libertas fails to state actionable claims, general defects pervade the Complaint and necessitate that all the claims against Katcher and Libertas be dismissed.  First, Plaintiff's careless (or deliberate) allegations lumping all the 3V and SV entities (and individuals) together as "SV" blurs important legal distinctions, making it impossible to decipher exactly what Plaintiff is alleging and against whom.  Second, many of the causes of action Plaintiff purports to assert are in actuality "derivative" in nature and he lacks standing to bring such claims.  Therefore, as a matter of jurisdiction, the

Court must dismiss the claims.  Third, Plaintiff has not shown (and has not pled) a cognizable injury to himself caused by any alleged conduct related to Katcher or Libertas.

A.     **Plaintiff Cannot State Claims Against Katcher And Libertas Based On Careless Pleadings That Disregard The Separate 3V And SV Entities**

It is impossible to discern from the imprecise allegations in the Complaint which entity(s) Plaintiff alleges Focht and Stagg embezzled funds from (or when they did so).  Plaintiff improperly groups 3V Master Fund with SV Special Situations Fund and refers to those legally distinct entities collectively as "SV" throughout the Complaint.  Plaintiff's sloppy effort (or lack thereof) to accurately plead allegations related to these separate entities fails to satisfy even the basic notice pleading requirements, much less the heightened standards of Rule 9(b) and the PSLRA (discussed more fully below).[5]  *See, e.g., Jones v. Ocwen Federal Bank,*

---

[5] For example, Plaintiff's careless and overly broad allegations fail to give notice about what is alleged against the separate entities.  3V Master Fund was the master fund in a master-feeder hedge fund structure formed by Katcher and Stagg in 2004.  The feeders funds that invested in 3V Master Fund were 3V Capital Partners, LP ("3V Capital Partners"), a fund for domestic investors, and 3V Capital Fund, Ltd. ("3V Capital Fund"), a fund for foreign investors.  While Stagg and Focht oversaw the day-to-day operations of the 3V funds (¶ 25), Katcher (as well as Stagg) held a 50% ownership interest in 3V Management LLC, 3V Master Fund's investment advisor, and 3V Advisors, the general partner of 3V Capital Partners, until Stagg bought out those interests in September 2007.

On the other hand, the SV hedge funds and related entities -- SV Special Situations Master Fund LTD (master fund), Stagg Capital Partners LP (domestic feeder fund), SV Special Situations Fund LTD (offshore feeder fund), Stagg Capital Group LLC (investment advisor), or Stagg Capital Partners LLC (general partner) -- were owned and controlled entirely by Stagg.  Stagg secretly formed those entities in or about 2006 or 2007 to solicit investors from the 3V funds (through a redemption and recontribution process), and were operated by Stagg and Focht.  Katcher was <u>never</u> an owner, operator, member, or investor.

147 F. Supp. 2d 219, 224 (S.D.N.Y. 2001) (dismissing claims for failure to satisfy Rule 8 because Plaintiff failed to allege "what the [wrongdoing] consisted of, who specifically engaged in the conduct, and when the conduct took place," and further noting that dismissal was appropriate because the lack of "clear and straight-forward" allegations caused "unnecessary confusion in understanding plaintiff's theories").

Likewise, it is impossible to discern from the allegations in the Complaint what documents Plaintiff alleges were misleading or inadequate, or when those documents were allegedly disseminated and from whom.  Neither the Explanatory Memorandum, Limited Partnership Agreement, or Subscription Agreement are attributed to any specific entity and the Complaint only alleges a date for the Explanatory Memorandum.[6]  Not only are these factual allegations necessary to identify the documents Plaintiff bases his claims on, but, again, they are essential given Plaintiff's separate investments at different times in distinct entities with different owners and employees.[7]

---

[6] Paragraph 1 of the Complaint alleges that the Limited Partnership Agreement and Subscription Agreement are "related" to the Explanatory Memorandum.  Because the Explanatory Memorandum is allegedly dated July 1, 2007 (¶ 20), it (and all the "related" documents) appear to be related to SV Master Fund, further confirming that Plaintiff has not stated any claims against Katcher or Libertas.

[7] Notably, these allegations are also crucial because it would be impossible for Katcher (or any other defendant) to have wrongfully omitted disclosures of Focht's and Stagg's actions (assuming, *arguendo*, that Katcher even had knowledge of their conduct) that occurred *after* the dissemination of the documents.

**B.**     **Plaintiff Lacks Standing To Bring Claims That Are Derivative In Nature**

Nothing in the Complaint establishes that Plaintiff has standing to state claims in his own right as an investor (limited partner) in a feeder fund of 3V Master Fund, for alleged damages suffered by 3V Master Fund.[8]  It is well-established that actions to enforce corporate entities' rights, or to redress injuries to those entities, cannot be maintained by an individual investor in his own name even though the injury to the entity may incidentally result in the diminution in value of the investor's investment.  *Ernst & Young Ltd. v. Quinn*, No. 09-cv-1164 (JCH), 2009 U.S. Dist. LEXIS 99385, at *20 (D. Conn. Oct. 26, 2009); *Chien v. Skystar Bio Pharm Co.*, 623 F. Supp. 2d 255, 261-63 (D. Conn. 2009) (dismissing breach of fiduciary duty seeking damages for loss of value of stock caused by alleged improper issuance of stock because claim was derivative in nature).[9]

---

[8] The general standards for evaluating whether Plaintiff's claims are derivative is no different merely because he invested in a limited partnership rather than a corporation. *Ernst & Young Ltd. v. Quinn*, No. 09-cv-1164 (JCH), 2009 U.S. Dist. LEXIS 99385, at *3, n.5 (D. Conn. Oct. 26, 2009).  Because Plaintiff alleges that "SV" was formed as a Delaware limited partnership (¶ 9), Delaware law applies to determine whether Plaintiff's claims are derivative or direct.  *Id.* *15.  Under Delaware law, the factors to distinguish between direct and derivative claims are (1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy.  *Id.* at *23.  Regardless, under Connecticut law, Plaintiff's claims would be derivative. *See id.* at *16-23 (applying Connecticut and Delaware law and finding claims derivative in nature).

[9] Plaintiff's lack of standing to state direct claims for harms allegedly suffered by 3V Master Fund deprives the Court of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure.  *See Connecticut v. Physician's Health Servs. Of Conn., Inc.*, 287 F.3d 110, 114-19 (2d Cir. 2002) (dismissing claims because plaintiff lacked standing to file direct action against defendants and court therefore lacked subject matter jurisdiction over action).

Plaintiff's claims, however, seek to do exactly that:  the Complaint blatantly asserts that 3V Master Fund suffered the alleged harm and transparently seeks recovery for a diminution in the value of Plaintiff's investment in the feeder fund invested in 3V Master Fund.  Indeed, the Complaint expressly alleges that Stagg's and Focht's embezzlements -- which form the basis for the claims asserted against Katcher and Libertas -- diverted "funds properly belong[ing] to SV and wrongfully diminished SV's worth and Plaintiff's Capital Account."  (¶ 58.) Accordingly, Plaintiff's breach of fiduciary duty and negligence claims against Katcher and unjust enrichment claim against Libertas are all derivative in nature and fall within the bar prohibiting Plaintiff from seeking damages in his own name.  See, e.g., *Ernst & Young Ltd.*, 2009 U.S. Dist. LEXIS 99385, at *23-29 (D. Conn. Oct. 26, 2009) (determining that claims asserted to seek recovery for injuries sustained on account of having an investment in a fund that diminishes in value are derivative); *Halo Tech Holdings, Inc. v. Cooper*, No. 07-CV-489 (AHN), 2008 U.S. Dist. LEXIS 66956, at *12-14 (D. Conn. Aug. 29, 2008) (dismissing direct claims alleging that defendants' self-dealing and diversion of assets caused a decrease in a corporation's revenue and, therefore, the value of plaintiff's shares, because the claims were derivative in nature).

Moreover, this case presents an even stronger justification for Plaintiff's lack of standing to redress injuries allegedly suffered by 3V Master Fund:  3V Master Fund has already asserted claims for the alleged injuries in the Federal Action.  *See*

*Rothstein v. Seidman & Seidman*, 410 F. Supp. 244, 250 (S.D.N.Y. 1976) (limited partners lacked standing to sue limited partnership's accounting firm for failing to disclose fraud allegedly perpetrated on limited partnership by its managing partners because limited partnership's liquidator was already suing firm on same charges).[10] Because 3V Master Fund has already asserted claims on its own behalf -- and therefore Plaintiff will never have standing to state claims in his own name -- the claims against Katcher and Libertas should be dismissed with prejudice.

**C.     The Complaint Fails To Plead Any Damages Related
        To Plaintiff's Investment In The 3V Hedge Funds**

A further general basis on which the claims against Katcher and Libertas must be dismissed is Plaintiff's inability to plead the essential element of damages. Notably absent from the Complaint are any factual allegations establishing that Plaintiff suffered any harm from alleged transfers out of 3V Master Fund.  And for good reason -- even if Plaintiff had standing to assert claims for the alleged diminution of value in 3V Master Fund -- Plaintiff has not alleged that his interest in 3V Capital Partners was redeemed at anything less than full value in September 2007. Indeed, because the books and Net Asset Value of the 3V Master Fund were allegedly inflated by the fictitious positions Focht allegedly created to conceal his transfers (¶ 28), Plaintiff's Capital Account would not have shown any diminution in value from

---

[10] Further, Plaintiff's legal right to ever state claims on behalf of *3V Master Fund* -- not 3V Capital Partners, the feeder fund in which he invested -- is, at the very least, highly suspect.

those transfers and presumably would have been redeemed at full Net Asset Value. Plaintiff alleges nothing to the contrary.

## II.

### The Federal Securities Claims Must Be Dismissed
### For Failure to Plead Fraud With Particularity or Scienter

**A.** **The Heightened Pleading Requirements of Rule 9(b) and the PSLRA**

To survive a motion to dismiss, Plaintiff must "provide the grounds upon which his claim rests through factual allegations sufficient to raise a right to relief above the speculative level." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)).  For a claim under Section 10(b) and Rule 10b-5(b) for material misstatements or omissions, Plaintiffs must plead facts showing:  (1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance by plaintiffs on the misrepresentation or omission; (5) economic loss; and (6) loss causation. *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 157 (2008).

For securities fraud claims, however, it is not enough for Plaintiff to plead general allegations; under Rule 9(b) and the PSLRA a complaint alleging securities fraud must meet heightened pleading requirements, stating with particularity the circumstances constituting fraud.  *Decicco v. United Rentals, Inc.*,

602 F. Supp. 2d 325, 336 (D. Conn. 2009) (citing *ATSI*, 493 F.3d at 99).[11]  Under Rule

9(b), for example, a complaint alleging fraudulent misrepresentations or omissions

must "'(1) specify the statements that the plaintiff contends were fraudulent, (2)

identify the speaker, (3) state where and when the statements were made, and (4)

explain why the statements were fraudulent.'"  *Allstate Ins. Co. v. Advanced Health*

*Professionals, P.C.*, 256 F.R.D. 49, 51 (D. Conn. 2008) (quoting *Lerner v. Fleet Bank,*

*N.A.*, 459 F.3d 273, 290 (2d Cir. 2006)).[12]

     The PSLRA imposes even more "[e]xacting pleading requirements."

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007).  Under the

PSLRA, plaintiffs are required to "specify each statement alleged to have been

misleading, the reason or reasons why the statement is misleading, and, if an

allegation regarding the statement or omission is made on information and belief, the

complaint shall state with particularity all facts on which that belief is formed."  15

---

[11] Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  The rule is applied assiduously to securities fraud.  *Chien v. Skystar Bio Pharmaceutical Co.*, 566 F. Supp. 2d 108, 114 (D. Conn. 2008) (quoting *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 168 (2d Cir. 2005)).  This "serves to provide a defendant . . . with fair notice of a plaintiff's claim, safeguard his reputation from improvident charges of wrongdoing, and protect him against strike suits."  *ATSI*, 493 F.3d at 99 (citing *Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004)).

[12] Moreover, under Rule 9(b) a complaint "may not rely upon blanket references to acts or omissions by all of the defendants, for each defendant named in the complaint is entitled to be apprised of the circumstances surrounding the fraudulent conduct with which he individually stands charged."  *In re Blech Sec. Litig.*, 928 F. Supp. 1279, 1292-94 (S.D.N.Y. 1996) (dismissing claims against certain defendants because "Rule 9(b) is not satisfied by a complaint in which 'defendants are clumped together in vague allegations'") (citation omitted).

U.S.C. § 78u-4(b)(1)(B) (2006).  In addition, the PSLRA requires plaintiffs to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind" -- i.e. "scienter."  15 U.S.C. § 78u-4(b)(2) (2006).  In order to adequately allege scienter, i.e., an intent "to deceive, manipulate, or defraud," *Tellabs*, 551 U.S. at 319, a plaintiff must allege facts "(1) showing that the defendants had both motive and opportunity to commit the fraud or (2) constituting strong circumstantial evidence of conscious misbehavior or recklessness."  *ATSI*, 493 F.3d at 99.[13]

      Plaintiff's federal securities fraud and control person claims against Gary Katcher must be dismissed because the Complaint does not come close to pleading facts necessary to satisfy these heightened pleading requirements.

---

[13] It is not enough to satisfy the PSLRA's strict requirements to set out "facts from which, if true, a reasonable person could infer that the defendant acted with the required intent."  *Tellabs*, 551 U.S. at 314 (internal quotation marks omitted).  Rather, "[t]o qualify as 'strong' within the intendment of [the PSLRA] . . . an inference of scienter must be more than merely plausible or reasonable--it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent."  *Id.*  Thus, to determine whether a complaint's scienter allegations can survive threshold inspection for sufficiency, courts "must consider, not only inferences urged by the plaintiff, . . . but also competing inferences rationally drawn from the facts alleged."  *Tellabs*, 551 U.S. at 314.

**B.**     **The Complaint Fails to Adequately Plead A Claim For Securities Fraud**

      **1.**     **The Complaint Does Not Allege An Actionable Misrepresentation or Omission Attributable to Katcher[14]**

      The Complaint does not specifically allege Katcher made or disseminated any false statement; rather, Plaintiff alleges that the investment objectives and redemption procedures stated in the vaguely described Explanatory Memorandum dated July 1, 2007, and related but undated Limited Partnership Agreement and Subscription Agreement, were made false and misleading only when Focht and Stagg misappropriated funds from the 3V hedge funds and/or the SV hedge funds because the misappropriations were not previously disclosed.  For at least two reasons, these allegations are insufficient to allege actionable omissions against Katcher.

      First, Plaintiff's unspecific allegations do not come close to satisfying Rule 9(b)'s and the PSLRA's requirements to plead claims with particularity.  As described above, the confused allegations in the Complaint make it impossible to determine what specific documents Plaintiff alleges are at issue.  Further, Plaintiff's allegations fail to plead when these documents were drafted, by whom, when they were disseminated to Plaintiff, or even the dates of Focht's and Stagg's misappropriations that Plaintiff alleges made these documents misleading.  At a

---

[14] The Complaint's securities fraud claims purport to be based on alleged misrepresentations and/or omissions.  (*See* ¶ 1.)  To the extent Plaintiff attempts to convert his claim to one under Rule 10b-5(a) or (c), nothing in the Complaint pleads that claim with particularity.

minimum, Rule 9(b) and the PSLRA require these basic allegations.  *See Basso Sec. Ltd. v. Interstate Bakeries Corp.*, No. 01cv575 (PCD), 2003 U.S. Dist. LEXIS 19623, at *8 (D. Conn. Jan. 18, 2003) ("A complaint is sufficiently particular in its allegations of fraud when it includes the who, what, when, where and how:  the first paragraph of any newspaper story.") (internal quotations and citations omitted).

Second, the Complaint does not plead and contains no factual allegations establishing that Katcher had any actual involvement in the preparation or dissemination of the challenged disclosures.  The Second Circuit applies a "bright line" test to misrepresentation and omission claims that requires that "a defendant must *actually make* a false or misleading statement in order to be held liable under Section 10(b)."  *Shapiro v. Cantor*, 123 F.3d 717, 720 (2d Cir. 1997) (emphasis added).  Indeed, in order to hold a defendant liable for alleged misstatements under Rule10b-5, "the misrepresentation must be attributed to *that specific actor* at the time of public dissemination."  *Wright v. Ernst & Young LLP*, 152 F.3d 169, 175 (2d Cir. 1998) (emphasis added).  "Anything short of such conduct is merely aiding and abetting, and no matter how substantial that aid may be, it is not enough to trigger liability under Section 10(b)."  *Shapiro*, 123 F.3d at 720 (citing the Supreme Court's holding in *Central Bank of Denver N.A. v. First Interstate Bank of Denver*, 511 U.S. 164 (1994), which eliminated aiding and abetting liability in private actions under Section 10(b)).  Nowhere in the Complaint is any allegedly misleading document attributed to Katcher; indeed, other than alleging that Katcher (as well as other defendants) owned

16

and/or operated SV, Stagg Capital Group, and other unnamed "related entities" (¶¶ 2, 13, 17) (which, as described above, is inaccurate), the Complaint does not even mention Katcher by name.

        2.        **The Complaint Fails To Plead A Strong Inference Of Scienter**

        The securities fraud claim against Katcher should be dismissed for the additional reason that the Complaint falls far short of satisfying the PSLRA's heightened pleading standards for scienter.  In wholly conclusory fashion, the Complaint alleges that defendants, as purported drafters of the disclosure documents (notably, the scienter allegations contain the first and only allegations related to the drafting of the unspecified documents), knew that the documents did not disclose Stagg's and Focht's embezzlements.  (¶ 35.)  At least as to Katcher, these allegations are nonsensical and lack any factual support.  Katcher was not an owner or operator of the SV hedge funds and related entities, and the Complaint itself alleges that "Focht…was given substantial freedom in operating SV, Group, Management and Advisors."  (¶ 22.)  Indeed, nothing in the Complaint establishes that Katcher had any involvement in drafting or disseminating the unspecified documents, much less provides any basis to infer that Katcher knew of or had any involvement in the embezzlements.  To the contrary, the Complaint alleges that Focht "disguise[d]" his misappropriations by booking fictitious securities transactions.  (¶ 28.)  Plaintiff cannot allege, on the one hand, that Focht's deceptive conduct concealed his misappropriations but, on the other hand, that Katcher must have

known.  Accordingly, any inference of scienter that can be drawn from the allegations in the Complaint is far outweighed by the more plausible and compelling inferences that Katcher did not know or have any reason to know about Focht's and Stagg's misappropriations.[15]

Moreover, Plaintiff cannot plead Katcher's scienter by relying totally on group pleadings.  Scienter allegations must be particularized.  *See Teamsters Allied Benefit Funds v. McGraw*, No. 09 Civ. 140 (PGG), 2010 U.S. Dist. LEXIS 23052, at *31 n.6 (S.D.N.Y. Mar. 11, 2010) (rejecting "attempts to demonstrate scienter through reference to the group pleading doctrine" and citing cases).[16]  Nowhere in the Complaint's self-described scienter allegations, however, is Katcher even specifically mentioned.[17]

---

[15] The PSLRA requires Plaintiff to plead a cogent and compelling "strong inference of scienter" that, as the Supreme Court instructed, must be "at least as compelling as any opposing inference one could draw from the facts alleged."  *Tellabs*, 551 U.S. at 323-24.

[16] *See also The Pennsylvania Avenue Funds v. Inyx, Inc.*, No. 08 Civ. 6857 (PKC), 2010 U.S. Dist. LEXIS 19177, at *35 (S.D.N.Y. Mar. 1, 2010) ("This type of "group pleading" of scienter -- as distinguished from collective authorship of a statement -- runs afoul of the PSLRA's requirement that a plaintiff 'state with particularity facts giving rise to a strong inference that *the defendant* acted with the required state of mind.'") (citations omitted) (Court's emphasis).

[17] The Complaint also fails to plead facts establishing the other requisite elements of a federal securities fraud claim, including justifiable reliance, transaction causation, or that the allegedly misleading disclosures were "in connection" with Plaintiff's investments in the 3V Capital Partners or SV Special Situations Fund, L.P.  The Complaint alleges that Plaintiff invested in "SV" on or about August 1, 2006.  (¶ 16.)  As described above, however, the Complaint fails to allege dates the supposedly misleading disclosures were disseminated.  Plaintiff cannot establish that he relied on those disclosures or that they were "in connection with" his investments if the documents were disseminated or made misleading only *after* August 1, 2006.

3.     **Plaintiff's Section 20(a) Claim Against Katcher Fails Because The Complaint Does Not State A Section 10(b) Claim Against Katcher**

The Court should also dismiss Count II of the Complaint, asserting a claim against Katcher for "control person" liability under Section 20(a).  As described above, the Complaint fails to plead with particularity violations of the federal securities laws.  Absent sufficient allegations of any primary violation of Section 10(b) or SEC Rule 10b-5, the secondary claim under Section 20(a) must be dismissed. *See, e.g., Rombach v. Chang*, 355 F.3d 164, 178 (2d Cir. 2004) ("Because we already have determined that the district court properly dismissed the primary securities claims against the individual defendants, the…secondary claims [under Section 20(a)] must also be dismissed.") (citation omitted); *Chien v. Skystar Bio Pharm. Co.*, 566 F. Supp. 2d 108, 120 (D. Conn. 2008) (dismissing Section 20(a) claim where plaintiff failed to plead a primary violation by a controlled person).

III.

**The Court Has No Jurisdiction To Decide Common Law Claims Against Libertas Or Katcher**

There is no basis for the Court to exercise supplemental jurisdiction under 28 U.S.C. § 1367 over the common law claims asserted against Katcher and Libertas once the federal securities fraud claims against Katcher are properly dismissed.  *Basso Sec. Ltd. v. Interstate Bakeries Corp.*, No. 01cv575 (PCD), 2003 U.S. Dist. LEXIS 19623, at *15 (D. Conn. Jan. 18, 2003) (dismissing state law claims for lack

19

of jurisdiction after dismissing federal securities law claims).[18]  The Complaint does not allege any basis for jurisdiction over claims against Katcher and Libertas beyond federal question jurisdiction (and, at least as to Libertas, the Complaint does not even allege any federal claims).  (*See* ¶ 6.)  Accordingly, the common law claims against Katcher and Libertas should be dismissed.

## CONCLUSION

Nothing in the Complaint specifically pleads which documents Plaintiff alleges were misleading, or links Katcher or Libertas to any of the vaguely alleged wrongdoing.  Rather, the Complaint merely lumps Katcher together with other defendants.  These allegations are insufficient to satisfy the heightened pleading requirements applicable to securities fraud claims.  Moreover, many of the causes of action Plaintiff purports to assert are in actuality "derivative" in nature and he lacks standing to bring such claims in his own name, nor has Plaintiff pled a cognizable injury to himself caused by any alleged conduct related to Katcher or Libertas.  Accordingly, the claims against Katcher and Libertas should be dismissed.

---

[18] Although the Complaint does not specify, Plaintiff presumably invokes this court's jurisdiction pursuant to 28 U.S.C. § 1367, a statute the Complaint does not bother to cite.

Respectfully Submitted,

DEFENDANTS,
KNIGHT LIBERTAS LLC and
GARY KATCHER

By___/s/ Eric Lubochinski_____
    Frederick S. Gold
    Fed. Bar. No. ct 03560
    Eric Lubochinski
    Fed. Bar No. ct 25842
    Shipman & Goodwin LLP
    300 Atlantic Street, Third Floor
    Stamford, Connecticut 06901
    Telephone: (203) 324-8100
    Facsimile: (203) 324-8199
    E-mail: fgold@goodwin.com
    E-mail: elubochinski@goodwin.com

       - AND -

    Howard Schiffman  (phv03720)
    Admitted *pro hac vice*
    Schulte Roth & Zabel LLP
    1152 Fifteenth Street, NW, Suite 850
    Washington, DC 20005
    Tel. (202) 729-7470
    Fax (202) 730-4520
    E-mail: howard.schiffman@srz.com

    Their Attorneys

## CERTIFICATE OF SERVICE

I hereby certify that on April 30, 2010 a copy of foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

/s/Eric Lubochinski
Eric Lubochinski

1458153v1